UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SABINA STARZYNSKI,  :<br>    Plaintiff,  : <br>  :<br>v.  :<br>  :<br>STANLEY BLACK & DECKER, INC.,  :<br>    Defendant.  : | <br><br><br>Case No. 3:20-cv-00478 (VLB)<br><br>December 6, 2021<br> |

## MEMORANDUM OF DECISION GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, [ECF NO. 26]

This employment discrimination action was brought by Plaintiff, Sabina Starzynski against her employer, Stanley Black & Decker, Inc. ("Stanley" or "Defendant"). Plaintiff asserted causes of action for hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, (Count One); unlawful retaliation under the Civil Rights Act (Count Two); common law negligent supervision and negligent retention (Counts Three and Four); and intentional infliction of emotional distress (Count Five).

On June 8, 2020, Stanley moved to dismiss Plaintiff's claims in their entirety, [ECF No. 12], which the Court granted-in-part on December 14, 2020, dismissing Counts Two, Three, and Four, which left Plaintiff's Count One for hostile work environment in violation of Title VII and Count Five for Intentional Infliction of Emotional Distress as Plaintiff's only remaining causes of action.

On April 15, 2021, Stanley filed the instant motion for summary judgment and memorandum in support thereof. [ECF Nos. 26-28]. For the following reasons, Stanley's motion for summary judgment is GRANTED.

**I. MATERIAL FACTS**

The Court draws the following facts from the Parties' Local Rule 56(a) Statements of Material Facts as supported by evidence in the record.

"Plaintiff, Sabina Starzynski ("Starzynski"), has worked for Stanley since June 2015." [ECF No. 27-2 (Defendant's Local Rule 56(a)1 Statement of Undisputed Material Facts ("Def.'s Stmt.") ¶ 1)]; [ECF No. 32-3 (Plaintiff's Local Rule 56(a)2 Statement of Facts ("Pl.'s Stmt.") ¶ 1)].  "Starzynski has the job title of Inspector." Def.'s Stmt. ¶ 2; Pl.'s Stmt. ¶ 2.

"Stanley also employed nonparty Matthew Deconti ('Deconti')."  Def.'s Stmt. ¶ 3; Pl.'s Stmt. ¶ 3.  "Deconti was Starzynski's coworker, not her supervisor. Deconti was not empowered to effect a significant change in Starzynski's employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Def.'s Stmt. ¶ 5; Pl.'s Stmt. ¶ 5.

"At all times relevant, Stanley had a Policy Against Harassment, Including Sexual Harassment (the 'Policy'), a then-existing version of which was provided to Starzynski when she began working for Stanley.  The Policy provides several means of reporting alleged incidents of sexual harassment.  Under the Policy, complainants could report such incidents to their supervisors and/or local Human Resources representatives.  If complainants are not satisfied with the response, they could then contact the Vice President of Human Resources.  Further, if a complainant was uncomfortable with any of the foregoing channels, or the matter was not resolved to the complainant's satisfaction, he or she could submit a report through Integrity@SBD, Stanley's confidential ethics system, or the complainant

could contact one or more of several Stanley officers." Def.'s Stmt. ¶ 4; Pl.'s Stmt. ¶ 4.

"Starzynski met Deconti at work." Def.'s Stmt. ¶ 6; Pl.'s Stmt. ¶ 6. "By 2018, Starzynski and Deconti had connected on Facebook and exchanged messages. At some point, Deconti began sending inappropriate messages and photographs to Starzynski. Starzynski asked Deconti not to send her these messages, and he apologized to her. Nevertheless, he would continue sending her messages." Def.'s Stmt. ¶ 7; Pl.'s Stmt. ¶ 7.

"On Saturday, January 26, 201[9], Deconti sent Starzynski a message that she found to be aggressive and hostile." Def.'s Stmt. ¶ 8; Pl.'s Stmt. ¶ 8. "Plaintiff not only found the message to be aggressive and hostile but also perceived the message to be sexual harassment because the image was of DeConti naked." Pl.'s Stmt. ¶ 8 (citing Deposition Transcript of Sabina Starzynski dated March 12, 2021, [Pl.'s Ex. 1], at 74:23-75:12).

"Starzynski was scared by the tone of DeConti's messages, and the next day, January 27, 201[9], she contacted both a colleague and her union steward to discuss the issue." Def.'s Stmt. ¶ 9; Pl.'s Stmt. ¶ 9.

"On Monday, January 28, 201[9], Starzynski first reported Deconti's messages to Stanley's human resources department." Def.'s Stmt. ¶ 10; Pl.'s Stmt. ¶ 10. Following that, Plaintiff blocked Deconti on Facebook, but he did, for a "couple of days," continue to visit Plaintiff's work area to visit his girlfriend, which Plaintiff found "intimidating." Pl.'s Stmt. ¶ 10 (citing Pl.'s Ex. 1 at 66:20-67:5); Pl.'s Ex. 1 at 66:20-67:5.

"Stanley investigated Starzynski's complaint, and on February 25, 2019, terminated Deconti's employment." Def.'s Stmt. ¶ 11; Pl.'s Stmt. ¶ 11.

## II.  STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no genuine factual disputes exist.  See *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011).  Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty.*

*of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726-27 (2d Cir. 2010).

### III.  DISCUSSION

#### A.  Count One (Hostile Work Environment in Violation of Title VII)

Stanley argues that Plaintiff's hostile work environment claim fails because:

> [W]here allegations of a hostile workplace are based on the conduct of co-workers, there must be a sufficient basis for imputing the conduct to the employer.  Further, where a co-worker or low-level supervisor has perpetrated the harassment, liability will be imputed to the employer only if it is negligent, that is, if it either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.

[ECF No. 27 at 3 (quoting *Jordan v. Cayuga Cnty.*, No. 5:01-CV-1037 (FJS/GLS), 2004 WL 437459, at *3 (N.D.N.Y. Feb. 9, 2004) (internal quotation marks omitted)]. Stanley argues that it is undisputed "that there was a reasonable avenue for complaint," citing Plaintiff's admission in her Rule 56a(2) Statement that Stanley had a published sexual harassment policy and that she had notice of and received training on the policy. Defendants argue "Stanley can be held liable only if it 'knew of the harassment but did nothing about it.'"  [ECF No. 27 at 3 (quoting *Jordan*, 2004 WL 437459, at *3 (internal quotation marks omitted)].

As to whether Stanley "did nothing about" Diconti's harassment of Plaintiff, Stanley argues that once it "became aware of Deconti's harassment of Starzynski, it promptly took appropriate action."  *Id.* at 4.  Stanley points out that it first learned

of Deconti's harassment on January 28, 2019, when Plaintiff reported it to Stanley's human resources department, and "then investigated Starzynski's complaint and terminated Deconti's employment on February 25, 2019." *Id.* Stanley sums up:

> In less than a month after Starzynski complained about Deconti's behavior, he was terminated. Stated simply, Stanley acted expeditiously and appropriately. Accordingly, there is no genuine dispute that Stanley did not act negligently, and that it is therefore entitled to the defense set forth in *Jordan v. Cayuga C[n]ty.*, 2004 WL 437459, at *3.

[ECF No. 27 at 4].

Plaintiff responds that Stanley's argument that it "acted expeditiously and appropriately" is "undercut by the testimony of three of Defendant's current or former employees who all testified that they had heard that Deconti had sexually harassed other female employees over the years and that those incidents were reported to Defendant's HR department. Thus, Defendant was aware that it employed someone who engaged in sexual harassment in the workplace and chose to do nothing." [ECF No. 32-1 at 9]. Plaintiff adds that Stanley "refused to produce a witness" during discovery that could testify as to Stanley's "knowledge of Deconti's behavior over the course of his employment," and Stanley, while it investigated Deconti's behavior towards Plaintiff, "permitted Deconti to come to Plaintiff's work area and continue to harass her." *Id.* Finally, Plaintiff argues that Stanley did not act "expeditiously," initially "tr[ying] to get away with doing nothing by telling Plaintiff that Deconti's conduct occurred outside of work and that nothing could be done," and later asking Plaintiff "inappropriate personal questions about her relationships with 'older men' in Defendant's workplace and by asking if Plaintiff was 'married.'" *Id.* at 9-10. If Stanley "had acted expeditiously, Deconti

would have been terminated immediately" after Stanley "became aware that he had sent unwanted sexually explicit photos to Plaintiff." *Id.* at 10.

Stanley replies that the testimony of the three Stanley employees regarding Deconti's prior harassment of another female employee is hearsay, which is prohibited in opposition to summary judgment: "A party cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial." [ECF No. 33 at 2 (quoting *Lewis v. Town of Waterford*, 239 F.R.D. 57, 60 (D. Conn. 2006)]. In each of the three cases, the witnesses testified that their knowledge of Deconti's prior harassment of female employees "derives from what they had heard from others." *Id.* at 2-3 (citing deposition testimony). Thus, because it is "not apparent that any of the hearsay declarants observed" Deconti's prior harassment, Plaintiff has failed to "show[] that <u>admissible</u> evidence will be available at trial." *Id.* at 3 (quoting *Lewis*, 239 F.R.D. at 60) (emphasis in Reply Brief). Because of this, Stanley argues, Plaintiff "has failed to create a dispute of material fact with respect to whether Deconti harassed other female Stanley employees before his harassment of" Plaintiff. *Id.* at 3-4.

Stanley also argues that Plaintiff recognized the inadmissibility of this hearsay problem in noticing the deposition of Stanley's corporate representative, who might testify as to whether Stanley was aware of Deconti's prior harassment, but that notice was improper in two respects. First, it only provided seven days between notice and deposition, allowing an inadequate amount of time to identify and prepare Stanley's corporate witness, and it noticed the deposition for a date

after the close of discovery. Stanley sums up that it "in no way indicated that it was categorically averse to the deposition—only that the timing was unreasonable. Starzynski never followed up to ask that the deposition be rescheduled." *Id.* at 4. Stanley thus argues that Plaintiff's argument that it was trying to hide the ball as to what it knew regarding Deconti "should be rejected." *Id.*

Moreover, Stanley argues, "[e]ven if, *arguendo*, the evidence [Plaintiff] submits concerning Deconti's [prior harassment] is not hearsay, it nevertheless does not create a dispute of <u>material</u> fact with respect to the First Count" because Plaintiff is really arguing that Stanley should have fired Deconti after the prior harassment, which "is more akin to a negligent retention theory, which this Court has dismissed." *Id.* at 5 (citing the Court's Order on Stanley's Motion to dismiss at 4). Plaintiff's hostile work environment claim must fail, Stanley argues, because it provided Plaintiff with "a reasonable avenue for complaint," and it "promptly investigated Starzynski's complaint and terminated Deconti's employment." *Id.* at 6. Thus, "even if Starzynski's evidence was not hearsay, it fails to create a dispute of material fact with respect to the First Count." *Id.* The Court agrees.

First, Plaintiff concedes that Stanley provided Plaintiff with a reasonable avenue for complaint, admitting that Stanley had a "Policy Against Harassment, Including Sexual Harassment," which "provide[d] several means of reporting alleged incidents of sexual harassment." [ECF No. 32-2 at 2 (admitting Defendant's Statement of Material Facts Paragraph Four, which described the various avenues for complaint)].

**Second,** Stanley's investigation into Plaintiff's allegations of sexual harassment was reasonable and timely. Plaintiff conceded during her deposition that Stanley commenced the investigation into her claims of sexual harassment <u>the same day</u> she reported it to Stanley's human resources department:

> Q. When was the first time you went to HR?
> A. Monday morning.
> Q. Okay. So you went with [union representative] Melissa that day?
> A. Yes.
> Q. And who did you meet with?
> A. We was talking with Eric. (*sic*)
> Q. So Melissa's there. And it's with Eric. And this is on January the 28th(*sic*)?
> A. Yes. And – and Eric called the Edwin, because the Edwin at that time, he was on the training that, because he was to replace Eric.
> Q. Was Eric at that time in Human Resources?
> A. Yes. (*sic*)

[ECF No. 32-4 at 13]. In addition, Stanley interviewed Plaintiff regarding her claims at least two more times:

> A. So first time I was in HR with the Melissa. She was with me, support me. . . . And then they calling me to office couple of times yet. The second time then I go by myself. . . . [S]o basically after that the [Union Steward] Eliud was all the time with me like a witness because, like I say, after a couple times talking with the HR . . . . (*sic*)

*Id.* at 10-11. Plaintiff also noted that HR promised to interview Deconti about the harassment allegations: "and after that the HR, they telling me, like, they must talk -- they must talk with the Matthew [Deconti] (*sic*)," and HR interviewed numerous co-workers of Plaintiff: "And they also call -- all my close friends in work they call down asking about -- about my situation (*sic*)." *Id.* at 11. Plaintiff's testimony under oath indicates that Stanley conducted a thorough investigation, interviewing her several times, interviewing the alleged offending party, Deconti, and interviewing

"all" of Plaintiff's "close friends [at] work." *Id.* Stanley's investigation was prompt and thorough.

Moreover, while the Court can fully appreciate that Plaintiff found these questions embarrassing, in the Court's view, the questions posed by Stanley's HR department were necessary and reflect Stanley's effort to conduct a neutral investigation, giving both sides the benefit of the doubt, and collect all potentially relevant information necessary to arrive at a fair and impartial disposition of Plaintiff's complaint. To do so, Stanley had to rule out the possibility that Plaintiff had, intentionally or unintentionally, invited Deconti's advances and so, at least perhaps in part, exonerated Deconti. For example, asking Plaintiff whether she had a personal relationship with Deconti and for details concerning same was necessary to determine whether the conduct was solicited or welcomed and thus whether Deconti was culpable. Other questions were similar, and when Stanley determined, after its thorough investigation into Deconti's conduct, that there was no justification for Deconti's abhorrent behavior, it promptly terminated his employment, 28 days to the day after Plaintiff first reported Deconti's behavior to Stanley.

The Court pauses briefly to note that the hearsay information Plaintiff provided regarding Deconti's alleged prior improper behavior is inappropriate in opposing summary judgment. "A party cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial." *Lewis*, 239 F.R.D. at 60.

Further, Plaintiff's attempt to accuse Stanley of concealing knowledge of Deconti's prior alleged misconduct rings hollow. Plaintiff noticed the deposition after the close of discovery, with only seven days advance notice and without a motion for extension of time showing good cause.  Stanley was not obliged to accommodate Plaintiff's untimely and unwarranted request. The Court also accepts Stanley's assertion at face value that it "in no way indicated that it was categorically averse to the deposition—only that the timing was unreasonable," because Plaintiff "never followed up to ask that the deposition be rescheduled," requested an extension of time to conduct it showing good cause for the delay, or filed a motion to compel.  [ECF No. 33 at 4].

In sum, the Court finds that Stanley not only provided a reasonable procedure for submitting complaints for harassment and other workplace ills, it also, once notified about just such a problem, launched an immediate, thorough, neutral and rapid investigation and rendered a decisive decision which protected Plaintiff from further workplace abuse.  it would be imprudent for an employer to deprive an employee of their livelihood, even an at will employee, without some measure of due process. Because of this, Stanley was not negligent in its handling of Plaintiff's complaint, and summary judgment must be therefore be granted on Plaintiff's Count One for hostile work environment in violation of Title VII.

### B. Count Five (Intentional Infliction of Emotional Distress)

The Court's Order denying Stanley's Motion to Dismiss Count Five, noted that "Stanley's conduct of its investigation as alleged does not meet the extreme and outrageous standard," but allowed that "if discovery reveals that Stanley in

fact ignored" Deconti's behavior, that, combined with Deconti's conduct, which the Court held was "outrageous," consisting as it did of, *inter alia*, sending Plaintiff a picture of his genitalia, "could in combination support a claim for intentional infliction of emotional distress."  [ECF No. 23].

The problem for Plaintiff is that discovery has revealed the exact opposite of what the Court feared.  Stanley, far from ignoring Plaintiff's complaint regarding Deconti's behavior, did, as just discussed, conduct an investigation that was immediate, thorough, and decisive in effect.  In short, the investigation was entirely proper and <u>does not</u> support Plaintiff's claim for intentional infliction of emotional distress, even in combination with Deconti's outrageous conduct.  For this reason, the Court grants Stanley's motion for Summary Judgment as to Plaintiff's Count Five.

## IV. CONCLUSION

For the foregoing reasons, Stanley's motion for summary judgment, [ECF No. 26], is GRANTED.  The Clerk is directed to enter judgment in Stanley's favor and close this case.

IT IS SO ORDERED

Vanessa Bryant
Digitally signed by Vanessa Bryant
Date: 2021.12.06 13:30:05 -05'00'

**Vanessa L. Bryant**
**United States District Judge**

Dated at Hartford, Connecticut: December 6, 2021.